PAMELA S. RICHEY, APPELLANT, V. RICHARD J. RICHEY, APPELLEE.

344 N.W.2d 642

Filed February 24, 1984. No. 83-046.

Randal B. Brown, for appellant.

Richard L. Halbert, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal from the district court's modification of a divorce decree wherein the custody of the older of two minor children was changed from the appellant mother to the appellee father. This case is heard before us de novo. *Dunne v. Dunne*, 211 Neb. 636, 319 N.W.2d 741 (1982).

On December 6, 1979, a decree was entered dissolving the marriage of the parties and granting custody of the two minor children, Jeremy, born July 1, 1977, and Timothy, born August 6, 1979, to the children's mother. A petition to modify the decree was filed by the children's father on October 6, 1982. After a hearing on December 17, 1982, the court determined that a change of circumstances had occurred and that the best interests of Jeremy required that his custody be awarded to the father. The mother appeals.

The petition to modify the decree contained no request to also change the custody of the younger brother, Timothy, and although this results in concern to the court, we restrict our review to the older brother, Jeremy.

Evidence adduced at the hearing indicated the appellant remarried sometime after the divorce and was divorced again on September 10, 1982, from her second husband, Richard Beer.

Jeremy suffers from "flecked retina syndrome," which has left him legally blind. He has attended

school for the visually handicapped in Nebraska City since November 29, 1982. His schooling will not be disrupted by the custody change to the appellee.

Testimony at the hearing showed that Jeremy had suffered a number of "accidents." These accidents included an incident when Jeremy drank gasoline, which required hospitalization for 4 days. This incident occurred on May 5, 1979, prior to the divorce between these parties but at a time when appellant had temporary custody of Jeremy. Appellant was with Jeremy at a trailer owned by Richard Beer, who married appellant after the divorce between appellant and appellee. Mr. Beer and appellant were painting and, during appellant's absence to go to her mother's home 4 miles away, Jeremy drank some gasoline. Appellant was later informed and, with Mr. Beer, took Jeremy to a hospital in Falls City. The hospital report stated: "This child apparently ingested undetermined amount of gasoline at home several hours, like about 6 hours before this hospital admission." Appellee found out about this incident from a nurse at the hospital.

On July 20, 1980, Jeremy suffered a scalp laceration. According to the appellant, this was the result of falling out of bed. On November 8, 1980, Jeremy suffered a ½-inch laceration to the left hand, requiring stitches, when he apparently fell on a pop bottle while playing outdoors. On September 24, 1982, Jeremy's heel and tendons in his foot were cut by a riding lawnmower operated by the appellant's second husband, Mr. Beer. Jeremy was confined to a wheelchair for a month after this incident.

In addition, Jeremy complained to the appellant in the summer of 1980 that a young relative of appellant's husband had sexually molested him while they were "playing." Appellant told appellee about this incident, but by the time the child was examined the medical doctor concluded that too much time had passed to properly evaluate the situation.

The paternal grandmother, Paula Richey, testified

that on visitations when the appellee would bring Jeremy directly to her home, she would bathe him because he was dirty. There was also evidence that Jeremy's clothing was dirty on his visits to Paula Richey. Some of Jeremy's battleship-gray underclothing was introduced in evidence. Mrs. Richey also complained of the child's riding in the back of a pickup truck without adult supervision while in his mother's care.

Mr. Beer testified that since his divorce from appellant, he has cared for the children, sometimes overnight, when the appellant was on dates.

The decree in this matter will not be modified unless there has been a change of circumstances indicating that the person who has custody is unfit for that purpose or that the best interests of the child require such action. *Dunne v. Dunne*, 211 Neb. 636, 319 N.W.2d 741 (1982). The district court determined that a change in circumstances had occurred and that the best interests of the child required the change of custody. On a de novo review we determine that the action of the trial court was correct and that it is in the best interests of Jeremy to change his custody to his father at this time.

The appellant contends that if Jeremy's custody is changed, it will damage the relationship he has with his brother, Timothy. We are not convinced that the potential emotional damage of such a separation outweighs the physical damage already suffered by Jeremy. Although it is generally sound public policy to keep children together in the custody of one of the parents, considerations of public policy do not, in all cases, prevent dividing the custody of children in a marriage dissolution situation so that each parent may have custody of a child or children. *Boroff v. Boroff*, 197 Neb. 641, 250 N.W.2d 613 (1977).

The trial court's action was proper and is affirmed.

AFFIRMED.